UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 2:08-CR-27 |
| V. | ) | Jordan/Inman |
| | ) | |
| STEVEN E. SHIPE | ) | |

## REPORT AND RECOMMENDATION

The defendant has filed a motion to suppress all evidence obtained as the result of a warrantless search and seizure of his vehicle on February 14, 2008. (Doc. 24). This motion was referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on May 23, 2008.

The only witness who testified was Agent Tim Davis, an officer with the Greeneville Police Department who is assigned to the Third Judicial District Task Force. Although no facts are in dispute, it bears noting that Agent Davis was an extremely credible witness. From his testimony, the following facts appear:

For some time prior to November 2007, defendant was known to law enforcement agencies, including the Third Judicial District Drug Task Force, as a drug dealer. In November 2007, Agent Davis turned his attention to defendant, and elicited the services of a confidential informant to purchase drugs from defendant. Pursuant to instructions of Agent Davis, the confidential informant placed a telephone call to the defendant to arrange for a drug buy; this telephone call was recorded. The confidential informant and defendant arranged to meet at the BP Market at the intersection of Highways 93 and 11-E.

Before the confidential informant went to his meeting with defendant, both his vehicle and his person were searched by Agent Davis. The confidential informant was then outfitted with both a recording device and a transmitter. He also was provided with pre-marked currency with which to purchase the drugs. Thereafter, the confidential informant drove to the assigned meeting place, followed by Agent Davis. When the confidential informant arrived at the BP Market, Agent Davis took up a position of surveillance. He observed defendant in a white GMC Yukon SUV. Agent Davis called in the tag number on this vehicle to his dispatcher, and received confirmation that the GMC Yukon SUV was owned by defendant.

Agent Davis observed the confidential informant getting into the vehicle with defendant where he stayed for 3-4 minutes. The drug transaction that occurred in that vehicle was both monitored and recorded.

After the drug transaction was concluded, the confidential informant got in his car and traveled back to the starting point, again followed by Agent Davis. The confidential informant turned over to Agent Davis what eventually was confirmed to be .7 grams of crack cocaine.

The District Attorney General for the Third Judicial District has a policy of not prosecuting a drug case that is based upon a single purchase of drugs; rather, the District Attorney General requires that there be at least two purchases of drugs by an informant before initiating a prosecution. For some reason, after the November 13, 2007, transaction, the relationship between defendant and the confidential informant deteriorated to the point

that the confidential informant could no longer make purchases from defendant. As a result, Agent Davis had only that single drug transaction that occurred on November 13, 2007. That was not enough evidence to pursue the matter further as far as the District Attorney General was concerned.

Since Agent Davis could not prosecute defendant, in early February 2008, he conferred with the Director of the Third Judicial District Drug Task Force regarding the possibility of administratively seizing defendant's GMC Yukon pursuant to Tenn. Code Ann. § 53-11-451(b)(4); the director agreed. Tennessee Code Annotated § 53-11-451(6)(4) allows the Director of the Tennessee Bureau of Investigation or his representative, or any local law enforcement officer, to seize a vehicle if the officer "has probable cause to believe that the property was used or is intended to be used . . ." in the transportation or sale of illegal drugs. Agent David thereupon prepared a "Notice of Property Seizure and Forfeiture of Conveyances" which he carried in his car with him in the event he saw the subject Yukon vehicle. On February 14, 2008, when he saw the defendant driving the Yukon vehicle on the Asheville Highway in Greeneville, Agent Davis turned his vehicle around and began following defendant. As he was doing so, he called in the tag number of the vehicle to his dispatcher, and was told that the white Yukon he was following indeed was registered to defendant and the one which he intended to seize. Agent Davis then called for backup assistance from officers in a patrol car.

Ultimately, defendant turned into the Food City parking lot adjacent to the Asheville Highway. Agent Davis followed him into the parking lot, parking about four rows away

where he could observe defendant. Defendant merely sat in his car, making no effort to leave it. As Agent Davis watched, a female walked up to defendant's car and entered it on the passenger side. Agent Davis testified that what he observed was exactly like the situation he observed during the November 13, 2007 drug transaction between defendant and the confidential informant: defendant parked his car; defendant merely sat in his car; another person entered his car; and a drug transaction occurred therein. Based upon what he was observing in the Food City parking lot, Agent Davis called the patrol unit to report that he believed a drug transaction was taking place.

The patrol unit arrived almost immediately. Agent Davis walked up to the driver's side of the Yukon vehicle, tapped on the window and identified himself as a police officer. Defendant only slightly opened the door. Agent Davis told defendant that he intended to seize his car for drug activity. He saw defendant's hands "digging at his crotch area," and Agent Davis understandably became concerned for his safety. He opened the car door fully and placed his hand on defendant to get him out of the car. It is stressed that no violence or force was used, merely the placement of a hand. As defendant stepped from the car, a Crown Royal bag[1] fell from the car seat where defendant was sitting onto the floor board. A $20.00 bill drifted from the bag onto the parking lot, and another $20.00 bill could be seen sticking out from the bag itself.

In plain sight on the console between the two front seats was a set of digital scales and

---

[1] The velvet-like bag that closes with a drawstring in which Crown Royal whiskey is sold.

a spoon; a residue (of something) could be seen on the spoon. Agent Davis retrieved the Crown Royal bag and, in addition to the $20.00 bill sticking out from the opening, Agent Davis found a quantity of crack cocaine in it. A search of the car revealed a handgun and an ammunition clip.

Defendant was arrested on the basis of the drugs found in his possession. Agent Davis did not give defendant the Notice of Property Seizure and Forfeiture of Conveyances form that he had prepared since the circumstances had changed: he had now seized drugs and money in addition to the car. Accordingly, he destroyed the original seizure notice, and prepared another one which was filed as Exhibit 3 to the hearing. The form filed as Exhibit 3 is identical in all respects to the one Agent Davis destroyed, apart from the handwritten information on it.

The thrust of defendant's motion to suppress is that Agent Davis had no lawful basis to administratively seize defendant's vehicle on February 14, 2008, as a result of which the "seizure" of defendant's person on that date, and the resultant search of the vehicle, were illegal. In this regard, defendant relies upon the time that had elapsed between the drug transaction on November 13, 2007, and the decision to seize his vehicle in early February 2008, approximately 2-l/2 months. In this regard, defendant points out that the Tennessee Supreme Court has held that Tenn. Code Ann. § 53-11-451(d)(4) is constitutional *only* if the warrantless seizure of a vehicle is accompanied by "exigent circumstances":

> T.C.A. [53-11-451(b)(4)] should not be construed as authorizing the seizure of an automobile without a warrant such as those disclosed in the facts of this case. The fact that probable cause exists for seizure

> is not enough; there must also exist "exigent circumstances"; therefore, T.C.A. [§ 53-11-451(b)(4)] should be construed as authorizing the seizure without a warrant, upon probable cause, only when "exigent circumstances" exist justifying summary seizure. "No amount of probable cause can justify a warrantless search or seizure, absent 'exigent circumstances.'" [citations omitted]. Thus construed and restricted, Tenn. Code Ann. [§53-11-451(b)(4)] may constitutionally be applied.

*Payne v. Breuer*, 891 S.W.2d 200, 204 (Tenn. 1994).

Clearly Agent Davis had probable cause to believe that the Yukon vehicle had been used in a drug transaction; he observed a drug transaction take place in that vehicle, and the transaction was monitored and recorded. However, in February 2008, there were no "exigent circumstances," and if the *Payne* case is the controlling law, there could have been no valid seizure in February 2008, and thus no subsequent search of the vehicle. However, *Payne* does not control.

Almost squarely on point is *Florida v. White*, 526 U.S. 559 (1999): In July and August of 1993, Florida police officers observed the defendant using his car to deliver cocaine, as a result of which they had probable cause to believe that his car was subject to forfeiture under the Florida Contraband Forfeiture Act. *Several months later*, the police arrested defendant on unrelated charges. At that same time, without a warrant, they seized the defendant's automobile under the aforesaid Florida law. An inventory search subsequently was performed, and the police found two pieces of crack cocaine in the ashtray for which defendant was charged. The defendant moved to suppress that evidence discovered during the inventory search of his car. The Florida Supreme Court ultimately held that a warrantless seizure of the defendant's vehicle, *absent exigent circumstances*,

violated the Fourth Amendment. 526 U.S. at 562-3. While acknowledging that the police could search the defendant's car without a warrant if they had probable cause to believe that it contained contraband, the Florida court had held that a warrantless seizure of the vehicle itself was unconstitutional because

> "[t]here is a vast difference between permitting the immediate search of a movable automobile based on actual knowledge that it then contains contraband [and] the discretionary seizure of a citizen's automobile based upon the belief that it may have been used at some time in the past to assist in illegal activity."

526 U.S. at 564.

The United States Supreme Court disagreed with the Florida Supreme Court, and reversed. First, the Supreme Court noted that although the police lacked probable cause to believe that the defendant's car contained contraband *at the time it was seized*, "they certainly had probable cause to believe the vehicle *itself* was contraband under Florida law." *Id.* 565. Since the vehicle was "readily movable contraband," law enforcement officers had "greater latitude in exercising their duties in public places." *Id.* 565. Thus, since the police seized the defendant's vehicle in a public parking lot, the warrantless seizure of that vehicle did not involve any invasion of the defendant's privacy. The Supreme Court therefore concluded "that the Fourth Amendment did not require a warrant to seize respondent's automobile in these circumstances." *Id.* 566.

It bears emphasizing that the Florida police officers had observed defendant use his vehicle for a drug transaction several months before they ultimately seized it without a warrant, and without exigent circumstances, which is precisely the situation before this court.

7

Agent Davis' intended seizure of defendant's Yukon vehicle on February 14, 2008, was entirely appropriate and constitutional.

Since Agent Davis' intended seizure of defendant's vehicle was constitutional, it follows that there would have been an inventory search of it and its seizure. That inventory search would have revealed the Crown Royal bag with the crack cocaine within it and the firearm. Inventory searches are one of the exceptions to the Fourth Amendment's requirement for a warrant. *See, e.g., Florida v. Wells*, 495 U.S. 1, (1990). Even the most cursory of inventory searches would have inevitably revealed the contents of the Crown Royal bag and the firearm. Of course, the discovery of the digital scales and spoon was justified on another ground entirely - the plain view doctrine. If a law enforcement officer (1) is lawfully located in a place where an object may be plainly seen, and (2) the incriminating character of the object is "immediately apparent," he may seize it even though the evidence is wholly unrelated to the reason the officer was in a position to observe it. *Horton v. California*, 496 U.S. 128 (1990). Agent Davis had a right to stand outside defendant's car and look into it: first, he had a right to be outside that vehicle because he intended to seize it; second, he had a right to stand outside that vehicle simply because it was parked in a public parking lot, and anyone and everyone could look into the vehicle if he so wished. Certainly to a trained law enforcement officer, the incriminating nature of the digital scales and the spoon was readily apparent. Having seen the drug paraphernalia in the car, Agent Davis was justified in searching the entire car under the "automobile exception" to the Fourth Amendment's requirement for a warrant: warrantless searches of vehicles are

permitted if there is probable cause to believe that the vehicle contains evidence of a crime and exigent circumstances exist. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970). The vehicle exception remains applicable even in non-exigent circumstances as long as it is mobile and law enforcement officers have probable cause to believe that it contains incriminating evidence. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Based upon his observation of the spoon and digital scales, Agent Davis certainly had probable cause to believe that the vehicle contained incriminating evidence.

And then there is yet another reason to uphold the search and seizure in this case. Agent Davis saw defendant park his vehicle in the Food City parking lot and just sit there. He then saw a woman walk up to the car and enter it, precisely the same situation that he observed in November 2007 when the confidential informant purchased drugs from defendant in another business parking lot. Defendant argues that it was Valentine's Day and this could have been a romantic tryst. However, this was *probably* another drug transaction. At the very least, Agent Davis had a reasonable suspicion, based on articulable facts, that a drug transaction was occurring in front of him based upon the knowledge he had. Under *Terry v. Ohio,* 392 U.S. 1, (1968), Agent Davis was constitutionally entitled to approach defendant and temporarily detain him for the purpose of investigating the matter further. When Agent Davis observed defendant using his hands in his crotch area, it was no less than prudent to instruct defendant to remove himself from the car. At that point, the digital scales, which were in plain view, had already been seen. As already discussed, when an officer is lawfully present (which Agent Davis was), and if the incriminating character of an item in

plain view is immediately apparent, the officer may seize those items. At the same time, the Crown Royal bag fell to the floor, and Agent Davis knew what it likely contained. At that point, the search of the vehicle for weapons was appropriate, and in fact a weapon was found.

For the reasons set forth above, it is respectfully recommended that defendant's motion to suppress (Doc. 24) be denied.[2]

Respectfully submitted,

       s/ Dennis H. Inman
       United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).